IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) <br> ) CRIMINAL CASE NO. 04-10231-MLW <br> ) |
| v. | ) <br> ) |
| PETER V. MAGGIO, III, *ET AL.* | ) <br> ) |

GOVERNMENT'S SENTENCING MEMORANDUM
RE: DEFENDANT **LOUIS PARADISO**

LOUIS PARADISO has pleaded guilty to:

Count One -- Conspiracy

Counts Two, Three and Four -- Wire Fraud

Count Five -- Mail Fraud

The Government submits the following matters for this Court's consideration in connection with the sentencing of defendant LOUIS PARADISO:

I.  The Government did not file objections to the draft PreSentence Report.  However, as noted by the Probation Department, the Government reconfirms its commitment to recommend a finding as to defendant PARADISO that the loan amounts aggregated $3,065,199 and that the net losses from those loans totaled $1,792,849, as set forth in a letter filed with this Court at the change of plea on June 15, 2006.  There is no net impact on the guidelines calculated by Probation.

II.  The Government submits the following in response to the Defendants' Sentencing Memorandum and Objections to the PSR:

  A.  PARADISO argues for a sentence of "probation for three years."

  1.  PARADISO's reference to §3553(a)'s requirement that the court identify "a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing does not help him in light of his offenses.

2.  Moreover, the First Circuit has noted, "[t]his pronouncement says nothing about what explanation is required from the district judge, but it is often cited by defendants as if it were an admonition to be lenient (and to explain a lack of leniency)." United States v. Navedo-Conception, 450 F.3d 54, 58 (1st Cir. 2006). However, the Court said, other sentencing factors set out in §3553(a), "[r]espect for the law, just punishment, adequate deterrence to criminal conduct, and protection of the public certainly do not suggest leniency."  Id. at 58 n.3.

3.  A sentence of probation is entirely inappropriate in light of the characteristics, seriousness and duration of PARADISO's offenses.

   a.  Particulars of PARADISO's criminal conduct are set out in the PSR.  *See* PSR ¶¶ 9, 10, 27-32, 106-178.

   b.  PARADISO, as with co-defendants HAVEY and SACCO, was prosecuted because -- among the numerous "straw" borrowers -- these three were clearly insiders in Maggio's operation of the scheme.

   c.  These three knowingly and repeatedly signed bogus loan documents for millions of dollars, recruited others to serve as potential "straw" borrowers, and were paid for their criminal activities.[1]

   d.  PARADISO, among all the "straw" borrowers, was the only one who executed not only routine commercial loan documents, but two additional significant documents: (1) a Resolution of the Board of Earth Management declaring that the company had authorized him to borrow "such funds as he saw fit", and (2) a personal Guaranty for loans he was signing, knowing he had no intention or capacity to repay any loans.

---

[1] As described at ¶ 24,n.6, ¶33, n.9, and ¶46 of the PSR, there were numerous "straw" borrowers in whose names, sometimes without their knowledge, loans were obtained.  Only PARADISO, HAVEY and SACCO recruited others.  Only PARADISO, HAVEY and SACCO were hanging around with Maggio on a daily basis.  Only PARADISO, HAVEY and SACCO were paid cash on a weekly basis for their participation in the scheme.

B.  PARADISO attempts to portray himself as merely a "victim" of co-defendant Maggio.[2]

1.  It is certainly true that Maggio was the mastermind of the overarching conspiracy.

2.  It is not true, however, that a "sheltered upbringing" or "limited intellect" brought PARADISO into the fraudulent schemes and brings him now before this Court for sentencing.  Indeed, if that were so what would be the explanation for co-defendants [e.g., O'Neill, Howe) who do not assert such flaws but stand with PARADISO to be sentenced?  PARADISO cannot so readily escape the fact that his criminal conduct was motivated by greed.

3.  PARADISO cannot claim "victim" status where he sought and received substantial pay to do little else but sign documents for millions of dollars in fraudulent loans.[3]

4.  PARADISO even attempts to stretch the fact that he got Maggio to pay off his credit card debt into a sign that he was somehow victimized.  See Paradiso Sentencing Memorandum at 7:  "Unbeknownst to Paradiso, it was in Maggio's interest to eliminate Paradiso's credit card debt because it would improve Paradiso's creditworthiness."  PARADISO attempts to avoid the fact that he chose to be involved for personal financial rewards.

---

[2] *See, e.g.,* Paradiso Sentencing Memorandum: "[H]is sheltered upbringing made him an easy target for Peter Maggio.; "...limited intellect made him particularly vulnerable to Maggio's manipulative behavior"; "was victimized by Maggio in this case."; "...limited intellect and naivete likely contributed to his involvement in this conspiracy."; "...he is now facing jail time because he was scammed by Maggio."

[3] During an FBI interview on July 13, 2000, PARADISO acknowledged that he received from Maggio approximately $350 per week for a year, largely in cash, and that Maggio paid off between $17,000 and $25,000 of PARADISO's credit card debt, and that Maggio provided PARADISO a new Jeep Cherokee as a "company vehicle."

   5. PARADISO even attempts to argue that because he was to receive from Maggio only $100 per truck, this fact somehow evidences a "naive" business acumen. Def. Sent. Mem. at 9.

     a. If that were so, does it mean that PARADISO's ability to get Maggio to pay him far more - by his own admission, approximately $37,000 - shows PARADISO actually had business skill?

     b. In any event, PARADISO has declared that he was enticed by Maggio's promise that if they started a construction company, "they could both realize a profit from the business when the business was successful", Def. Sent. Mem. at 7, and that from company profits "Maggio would help PARADISO buy a home...." FBI 302, July 13, 2000. Thus, it was not the supposed $100 per truck at all, but the future business and personal profits, that motivated PARADISO.[4]

 C. PARADISO claims his father's vulnerable condition as a basis for a sentence of probation.

   1. PARADISO neglects to explain that he intentionally got his father, Angelo Fenno, involved in the scheme when Fenno was already elderly and infirm.

   2. Now PARADISO refers to his elderly father's condition as a justification to avoid incarceration.

   3. In any event, PARADISO does not explain why other family members, including perhaps some who write letters on behalf of PARADISO and co-defendant cousin SACCO, cannot provide care for Angelo Fenno.

---

[4] PARADISO takes care to inform this Court that he suffered from an incapacitating back injury in July 1998, *see Def. Sent. Mem. at 3,* but does not explain how he was prepared to start a construction company with Maggio at that same time. *Id.* at 7.

- D. PARADISO opposes enhancement under USSG §2B1.1(b)(9)© for use of "sophisticated means."  *See also* Def. Obj. to ¶¶ 216-229.

    1. The overarching scheme clearly involved the use of sophisticated means and that enhancement applies to the sentencing of individual defendants in connection with that scheme.

    2. The Government incorporates, by reference, its discussion at pp. 6-11 of Government's Sentencing memorandum re: Michael O'Neill regarding application of the enhancement in this case.

    3. The "sophisticated means" enhancement applies to sentencing of PARADISO, as with co-defendants.

- E. PARADISO opposes enhancement for his role under USSG ¶ 3B1.1.

    1. The enhancement applies to PARADISO on two independent bases: (1) his position as the President of Earth Management & Equipment Co., Inc., and (2) his recruitment of other "straw" borrowers.

    2. In <u>United States v. Voccola</u>, 99 F.3d 37 (1st Cir. 1996), the district court applied a section 3B1.1(b) enhancement upon a finding that the defendant told his sister-in-law how to file a bogus auto insurance claim, as part of an extensive auto insurance fraud charged in a racketeering indictment.  The First Circuit upheld the enhancement on that basis.  <u>Id</u>. at 44.  More importantly, the appellate court searched the record itself and found ample *additional* basis for the enhancement, *viz*., the defendant's ownership of one of the body shops involved in the larger scheme of insurance fraud.  <u>Id</u>. at 44-45.

        > It would therefore be reasonable for the district court to have inferred, from defendant's ownership of one of the loci of the criminal activity, a certain degree of managerial control.  It is apparent, therefore, that enhancement by three levels under ¶ 3B1.1(b) was proper.  *Id*. at 45.

        In the present case, PARADISO accepted the position of President of Earth Management, the central company in the loan scheme. Even if acting under Maggio's instructions, PARADISO conducted various activities in his capacity as *de jure* President, signed checks in his capacity as President, applied for multiple loans in that capacity, executed loan closing documents in that capacity, and executed a formal Resolution of the Board in that capacity to further his ostensible authority to obtain loans for Earth Management. Indeed, as President of Earth Management, PARADISO executed a $ 500,000 construction bond at Century Bank.[5] It is reasonable for this Court to infer, from PARADISO's formal position as President and his actions in that capacity, a certain degree of managerial control in this case, even where superior control was held by Maggio.

3. It is even more clear that the enhancement applies where PARADISO recruited Sacco, Havey, Fenno and Didonato as potential straw borrowers for loans.[6]

    a. In United States v. Bey, 188 F.3d 1, (1st Cir. 1999), the court affirmed the sentence enhancement for a supervisory role because the defendant recruited others to serve as couriers to import cocaine. Id. at 23-24. The defendant argued the enhancement should not apply where couriers were "dupes" unaware of the illegal activities. The First Circuit held the enhancement applied because at least one courier, the defendant's wife, was a knowing and criminally responsible member of the conspiracy, id. at 24-25, thus "the district court correctly enhanced Bey's sentence pursuant to section 3B1.1(b)."

---

[5] *See* FBI 302, interview of PARADISO on July 13, 2000.

[6] During an FBI interview on July 134, 2000, PARADISO acknowledged that he also introduced another cousin, Michael Sacco, to Maggio with the result that a DBA called Eastern Trucking Corp. was created. Two loans totaling $484,000 were obtained in the name of Michael Sacco DBA Eastern Trucking.

       b.    Other courts have also included recruitment of accomplices as a relevant factor for enhancement under ¶3B1.1(b).  *See*, United States v. Willis, 433 F.3d 634, 636 (8th Cir. 2006)("[I]t is enough if the defendant assumed organizing or leadership functions such as recruiting others, determining the price or location of sales, and so forth); United States v. Njau, 386 F.3d 1039, 1040-41 (11th Cir. 2004)(enhancement affirmed where defendant recruited others who played supporting role and evidenced their knowledge of the scheme); United States v. Crazy Jim, 1995 U.S.App. LEXIS 31440 *4 (7th Cir. 1995)(citing relevant factors, including "the recruitment of accomplices....").

       c.    The principle that recruitment of others results in a supervisory role enhancement has even more application here because "straw" borrowers PARADISO recruited became such active participants to expand the fraudulent scheme, and PARADISO traveled with them in furtherance of that scheme.[7]

F.    PARADISO sites personal financial consequences as a basis for a reduced sentence. *See* Def. Sent Memo at 11.

    1.    PARADISO says he was forced to file bankruptcy.

       a.    In fact, this was a consequence of which he was specifically informed by MAGGIO at the outset.  *See* PSR at ¶¶ 24, 28 (straw borrowers were told that if the scheme collapsed the "worst case scenario" meant they would have to declare bankruptcy.).

       b.    PARADISO simply made the choice to engage in the criminal scheme after being told that bankruptcy was a potential result.

       c.    He cannot now claim bankruptcy as mitigation.

---

[7] The Bey court noted that where Bey's recruitment of others resulted in application of the enhancement "[i]t is of no matter that the government did not prosecute or convict Catherine Bey for her participation." Id. at 25.  The enhancement applies with even greater force where two of PARADISO's recruits, HAVEY and SACCO, have been prosecuted.

      2.    PARADISO sites his payment of corporate taxes for Earth Management as a mitigating factor.

          a.    In fact, PARADISO's payment of the corporate taxes serves to reinforce his managerial control over Earth. *See* <u>Voccola</u>, 99 F.3d at 44-45.

          b.    Even if PARADISO has paid corporate taxes, he has yet to pay taxes on the credit card payoffs, "company car" and cash income he received for his criminal activities.

          c.    In any event, the $19,507 PARADISO paid for corporate taxes is still substantially less than the cash he received for participating in the fraudulent loans.

G.    PARADISO requests that this Court award him a "minor role adjustment to his guideline calculation." *See* Def. Sent. Memorandum at 15.

      1.    The breadth and duration of PARADISO'S role in the fraudulent scheme are detailed in the PSR, and cannot support a finding that PARADISO played a minor role in the overarching conspiracy.

      2.    The evidence shows that PARADISO's knowing criminal conduct lasted from January 1998 to October 1999, and ultimately involved 20 loans in his name aggregating $4,210,790.

      3.    PARADISO recruited additional "straw" borrowers and thereby enlarged the conspiracy, scheme and losses.

      4.    PARADISO's attempt, just like that of O'Neill, to compare his financial gain to the total losses in this case is a non-starter. *See* Def. Sent. Memorandum at 14 ("Paradiso received approximately two-thousandths percent (.002%) of the loan proceeds"). As the Government noted in response to O'Neill's parallel claim, even Maggio could argue that he did not personally net a significant gain from the massive fraud. In any event, PARADISO's role in the offenses is not measured by his financial gain but by the loss he created.

    5.    Finally, neither the Government nor the PSR hold PARADISO liable for the aggregate losses from the overarching conspiracy. Rather, he is being held accountable for those loans and losses in which PARADISO was directly involved. Where the PSR already gives PARADISO a reduced level of liability -- approximately $1.8 million among $15,731,860 losses from the overarching conspiracy -- he cannot claim to be a "minor participant" regarding that reduced level.

Respectfully submitted this 18th day of October, 2006.

                              MICHAEL J. SULLIVAN
                              UNITED STATES ATTORNEY

                     By:  /s/ Victor A. Wild
                         VICTOR A. WILD
                         Assistant U.S. Attorney
                         One Courthouse Way
                         Boston, MA 02210
                         (617) 748-3100

## CERTIFICATE OF SERVICE

This is to certify that I have this day served upon the attorneys listed below a copy of the foregoing document via ECF.

                              /s/ Victor A. Wild
                              VICTOR A. WILD
                              Assistant U.S. Attorney

| | |
|---|---|
| James M. Merberg, Esq.<br>66 Long Wharf<br>Boston, MA 02110<br>Attorney for Peter V. Maggio | William M. White, Esq.<br>1 Faneuel Hall, 3rd Floor<br>Boston, MA 02109<br>Attorney for Sean Sacco |
| Joseph S. Oteri, Esq.<br>20 Park Plaza<br>Boston, MA 02116<br>Attorney for Michael R. O'Neill | Elliott M. Weinstein, Esq.<br>228 Lewis Wharf<br>Boston, MA 02110<br>Attorney for William A. Howe |
| Scott P. Lopez, Esq.<br>24 School Street<br>Boston, MA 02108<br>Attorney for Louis A. Paradiso | Roger Witkin, Esq.<br>6 Beacon Street<br>Boston, MA 02108<br>Attorney for Matt A. Havey |